*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLARE ARTHUR HASCALL,

        Defendant-Appellant.

UNPUBLISHED
July 16, 2026
1:42 PM

No. 374524
Lapeer Circuit Court
LC No. 22-014331-FC

Before: GADOLA, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13 years old, defendant at least 17 years old), four counts of CSC-I, MCL 750.520b(1)(b) (relationship), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years old, defendant at least 17 years old). The trial court sentenced him to 25 to 40 years' imprisonment for his CSC-I conviction based on the victim's age, served concurrently with his other sentences of 11 to 25 years' imprisonment for his four remaining CSC-I convictions, and 5 to 15 years' imprisonment for his CSC-II conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Beginning when she was three years old, AH lived with defendant (her maternal grandfather and adoptive father), Kathleen Hascal (defendant's wife and AH's adoptive mother), and her younger brother and sister. When AH was 12 years old, in the August before she began the sixth grade, defendant groped and "suck[ed]" on AH's bare breasts while she sat on his lap and watched television in the living room of the home. Defendant left marks on AH's breasts after he sucked on them. This occurred on at least three occasions and left AH feeling disturbed and embarrassed.

By the time AH was in seventh grade, defendant began touching AH's vagina, penetrating her with his fingers and tongue "multiple times a week." When this occurred, defendant and AH were the only people in the room. Through at least the seventh grade, defendant's sexual assaults of AH occurred "every other day." Defendant also penetrated AH's vagina with his penis on

-1-

several occasions. AH recalled a particular instance when she was on the couch in the living room at about 11:00 p.m., and defendant pulled her pants and underwear down and her shirt above her breasts. Defendant then penetrated AH's vagina with his penis. AH recalled two other specific occasions of defendant inserting his penis into her vagina, including one that occurred in the bedroom she shared with her sister. AH also testified that defendant would enter the bathroom when AH was using the shower and grope her breasts and wash her body. When AH was between the ages of 13 and 14, she did not menstruate for two or three months and suspected that she might be pregnant.

In the spring of 2021, defendant sustained an ankle injury that sent him to the hospital, where it was discovered that he had a brain tumor requiring surgery. Defendant had limited mobility for several weeks because of the ankle injury, but he continued to sexually assault AH. AH testified that she was last sexually assaulted by defendant on September 14, 2021. On September 15, 2021, AH revealed to her teacher that defendant was sexually assaulting her. AH's teacher reported the incident to the school's guidance counselor, and AH and her siblings were transported to the Lapeer Child Advocacy Center (CAC). At the CAC, a sexual-assault nurse examiner (SANE nurse), met with AH, who recounted defendant's repeated sexual assaults. The SANE nurse took physical evidence from AH using a swab kit, taking samples from her mouth and vaginal area. The results of AH's swab kit report indicated the possible presence of male DNA. Further DNA analysis then indicated that the DNA matched defendant "and would be expected to match all other paternally related males."

In July 2023, defense counsel petitioned the trial court for a competency evaluation after defendant had craniotomy surgery to treat his brain tumor, and further alleged that defendant had been recently diagnosed with cerebral radiation necrosis. Defense counsel stated in the petition that a craniotomy and cerebral radiation necrosis "are known to cause memory loss, personality change, cognitive impairment, and similar conditions." The trial court granted the request, and defendant completed a competency evaluation performed by a psychiatrist from the Center for Forensic Psychiatry. In February 2024, the trial court held a hearing to discuss defendant's competency, and the parties stipulated that defendant was competent. The trial court entered an order finding that defendant was competent to stand trial.

At trial, AH's sister testified that when she shared a room with AH, defendant would enter the room at night and sit by AH. This occurred "multiple times." AH's sister recalled a time when she was sleeping on the bottom bunk, where AH usually slept, and was awakened by defendant rubbing her leg. When she woke to defendant rubbing her leg, he seemed to realize that she was not AH and "walked away." After AH moved into her own room, defendant never went into the sister's room at night. Kathleen testified that defendant suffered from significant mobility issues from November 9, 2019 to June 1, 2020. She testified that she did not recall a time when she woke up to use the bathroom during the night and defendant was not in their shared bed. She admitted that she used a "CPAP" machine for sleep apnea while she slept, but she stated that it did not affect her ability to hear.

After the jury found defendant guilty of all counts, the trial court sentenced defendant as described. This appeal followed. In June 2025, defendant moved for a new trial in the trial court, arguing that he was denied the effective assistance of counsel. The trial court entered an opinion and order denying the motion. Defendant now appeals.

-2-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court abused its discretion when it denied his motion for a new trial, because defense counsel failed to (1) pursue an alibi defense, (2) request an independent competency evaluation, (3) consult forensic interview experts, and (4) seek to discover AH's medical records. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). An abuse of discretion occurs when the trial court's "decision falls outside the principled range of outcomes." *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008).

"Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law, and a trial court's findings of fact are reviewed for clear error, while questions of constitutional law are reviewed de novo." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (citations omitted). When no *Ginther*[1] hearing is held, this Court limits its review to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. ANALYSIS

"The right to counsel guaranteed by the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). To succeed on a claim of ineffective assistance, the defendant must satisfy the two-prong *Strickland*[2] test:

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted). "Counsel's performance is strongly presumed to have been born from a sound trial

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See also *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994) (adopting the *Strickland* test as the standard to determine whether a defendant was denied the effective assistance of counsel under the state constitution).

strategy. This Court should not substitute our judgment for that of counsel or use the benefit of hindsight when assessing counsel's competence." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (quotation marks and citations omitted).

## 1. ALIBI DEFENSE

Defendant first argues that defense counsel was ineffective for failing to present an alibi defense during the pretrial and trial stages of the proceedings. He contends that because Kathleen testified that there was never a time when she woke up during the night to use the bathroom that defendant was not in their shared bed, his counsel could have raised this as an alibi defense and the burden would then have shifted to the prosecutor to prove that defendant was present for the sexual assaults against AH. We disagree.

MCL 768.20 governs a defendant's responsibility regarding the introduction of testimony in support of an alibi defense:

> (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

> (2) Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, or at such other time as the court may direct, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case. [MCL 768.20(1) and (2).]

If the defendant fails to file the notice of his intention to present an alibi defense, then "the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi." MCL 768.21(1). Likewise, if the prosecuting attorney fails to file a rebuttal, then the court must exclude any rebuttal evidence. MCL 768.21(2). Alibi testimony is "testimony offered for the sole purpose of placing the defendant elsewhere than at the scene of the crime." *People v McGinnis*, 402 Mich 343, 345; 262 NW2d 669 (1978) (quotation marks and citation omitted).

When there is alibi testimony, the trial court must give an alibi instruction if the defendant requests it. *Id.* The model criminal jury instruction for an alibi defense state as follows:

(1) You have heard evidence that the defendant could not have committed the alleged crime because [he / she] was somewhere else when the crime was committed.

(2) The prosecutor must prove beyond a reasonable doubt that the defendant was actually there when the alleged crime was committed. The defendant does not have to prove [he / she] was somewhere else.

(3) If, after carefully considering all the evidence, you have a reasonable doubt about whether the defendant was actually present when the alleged crime was committed, you must find [him / her] not guilty. [M Crim JI 7.4.]

In arguing that defense counsel failed to present an alibi defense, defendant relies on Kathleen's trial testimony, in which she stated that she never noticed that defendant was not in their shared bed when she got up at night to use the bathroom. Critically, she never expressly stated that she was with defendant at the time of any specific sexual assaults. In other words, the testimony fails to place defendant in their shared bed at the time the sexual assaults occurred. As the trial court aptly described, Kathleen's testimony, "even if fully credited, does not logically exclude the possibility the defendant could have been elsewhere in the house at other times of the night. Thus, it does not amount to evidence of an alibi." Furthermore, defense counsel elicited that testimony as part of a longer line of questioning about defendant's physical condition, in which the adoptive mother testified that defendant had suffered serious injuries that left him "sleeping more" and bound to a wheelchair or "a noisy walker." Taken in context with the rest of the testimony, it is clear that even if it possibly supported an alibi defense, the testimony that defendant was in bed during the night served as evidence of defendant's weakened physical condition and inability to walk to AH's bedroom to commit the offenses. Because the *sole* purpose of the testimony was not to provide an alibi, it was not "alibi testimony" that would require a notice of intent under MCL 768.20(1). See *McGinnis*, 402 Mich at 345. Defense counsel was not ineffective for failing to file a notice of intent that was not necessary in the first place.

But even if the testimony were interpreted as providing an alibi, and even if providing an alibi defense were the sole purpose of the testimony, defense counsel's failure to file a notice of intent to introduce that testimony did not prejudice the defense. The testimony was admitted without objection, meaning that the negative consequence of a failure to file a notice of intent, i.e., exclusion of the alibi evidence, did not occur. If anything, the lack of notice *benefited* defendant because it did not give the prosecutor the opportunity to prepare rebuttal evidence for trial. See MCL 628.30(2).

Defendant also argues that the alibi instruction, if given, would have shifted the burden from defendant to the prosecution to "prove beyond a reasonable doubt that Defendant-Appellant was actually in the bedroom of the Complainant," and that defense counsel deprived defendant of that benefit by failing to request the instruction. But there is no burden-shifting framework for an alibi defense:

Although alibi is frequently characterized as a defense, it is in fact merely a rebuttal of the prosecution's evidence. The defendant may not be required to 'prove' an alibi:

> Testimony in support of an alibi may accomplish no more than the raising of a reasonable doubt as to the sufficiency of the proofs connecting an accused with the crime alleged or render such proofs unsatisfactory. If the testimony relative to an alibi serves such purpose, it creates a reasonable doubt as to the guilt of an accused. In other words, an alibi may fail as a substantive defense and yet serve to raise a reasonable doubt as to the guilt of an accused. [*People v Burden*, 395 Mich 462, 466-467; 236 NW2d 505 (1975) (quotation marks and citation omitted).]

M Crim JI 7.4(2), therefore, does not *shift* the burden of proof to the prosecutor—it simply reminds the jury that the burden *remains* with the prosecutor. The jury in this case was properly informed of the burden of proof because the trial court instructed that "[t]he prosecutor must prove each element of the crime beyond a reasonable doubt. The Defendant is not required to prove his innocence *or to do anything*." (Emphasis added). A specific alibi instruction would not have substantially clarified the applicable law. And even if the instruction would have specifically called the jury's attention to the purported alibi testimony, the DNA evidence, combined with AH's testimony of repeated sexual assaults, which were partially corroborated by her sister, outweighed the weak testimony presented by Kathleen, who may have been biased in favor of defendant because he was her husband.

For all of these reasons, and especially considering that the jury had the ability to consider this purported alibi evidence and still convicted defendant, defendant has failed to prove that defense counsel was ineffective or that he was prejudiced by any potential errors regarding his failure to pursue an alibi defense.

## 2. INDEPENDENT COMPETENCY EVALUATION

Defendant contends that defense counsel was ineffective for failing to seek an independent competency evaluation. This argument also fails.

"The conviction of an accused while he is incompetent to stand trial violates due process." *People v Newton*, 179 Mich App 484, 487; 446 NW2d 487 (1989). But under MCL 330.2020(1), a criminal defendant is presumed to be competent:

> (1) A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

"Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by . . . the Center for Forensic Psychiatry . . . ." *Newton*, 179

Mich App at 487, citing MCL 330.2026. After reviewing the Center's report, the trial court may determine the defendant's competence in its discretion. *Id*. at 488. Additionally, "[o]n a showing of good cause by either party, the court may order an independent examination of the defendant relating to the issue of competence to stand trial." MCR 6.125(D).

Defense counsel was not ineffective for failing to request an independent competency evaluation. After defendant's brain surgery, defense counsel filed a petition suggesting that defendant's competence was in question. The trial court granted the petition. After receiving the competency evaluation, his counsel stipulated to defendant's competence.

Defendant argues that "the nature of [the] heinous allegations against him," in contrast with his "lifetime of good behavior," constituted good cause for an independent competency evaluation under MCR 6.125(D). Defendant is wrong for at least two reasons. First, the nature of AH's allegations against defendant and his history of good behavior were irrelevant to the question whether defendant understood the proceedings against him or was capable of assisting in his own defense. Defendant presents no evidence that his disability actually affected his competence, nor does he argue that his original competency evaluation was inaccurate or incomplete. Second, MCR 6.125(D) permits, but does not compel, a trial court to order an independent medical evaluation. See *People v Davis*, 337 Mich App 67, 77; 972 NW2d 304 (2021) ("Use of the word 'may' ordinarily is permissive.").[3] Defendant has not demonstrated that the trial court would have granted a request for an independent competency examination. Under these circumstances, defendant has not met his burden to prove that his counsel was ineffective for choosing to stipulate to defendant's competence instead of requesting an independent competency evaluation.[4]

---

[3] Defendant also argues that his counsel was ineffective because he failed to inform him of his "right" to an independent competency evaluation. As we explained, however, the decision to grant a request for an independent evaluation is within the trial court's discretion. Defense counsel was not ineffective for failing to inform defendant of a right that does not exist. Nor was he ineffective for failing to inform defendant of the *option* to request an independent evaluation when there was no good cause to justify the request to begin with.

[4] Defendant mixes his discussion of his competence to stand trial with statements about criminal responsibility and the legal insanity defense. These concepts are distinct. "Legal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.' " *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001), quoting MCL 768.21a(1). To present an insanity defense, a defendant must provide written notice of his intention to assert the defense. MCL 768.20a(1). The trial court then orders an examination *relating to the claim of insanity* by the Center for Forensic Psychiatry, and either party is entitled to an independent examination with no good-cause requirement. MCL 768.20a(2) and (3). Notwithstanding the mixing of these concepts, defendant appears to only challenge defense counsel's approach to the competency evaluation. To the extent that defendant may believe that defense counsel should have also pursued a completely separate criminal-

### 3. FORENSIC EXPERT

Defendant next argues that defense counsel's failure to consult forensic experts constitutes ineffective assistance of counsel because of AH's age and particular susceptibility to provide unreliable information during forensic interviews. We disagree.

Our Supreme Court has stressed the importance of experts when a defendant is faced with forensic testimony of children "because of the reliability problems created by children's suggestibility in child-sexual abuse prosecutions." *People v Peterson*, 450 Mich 349, 371; 537 NW2d 857 (1995). Counsel may be ineffective for failing to consult an expert witness when he does not have the expertise or experience required to make a "reasonable, informed determination as to whether an expert should be consulted or called to the stand." *People v Trakhtenberg*, 493 Mich 38, 54 n 9; 826 NW2d 136 (2012) (quotation marks and citation omitted). "While an attorney's selection of an expert witness may be a paradigmatic example of trial strategy, that is so only when it is made after thorough investigation of the law and facts in a case." *Ackley*, 497 Mich at 390 (quotation marks, brackets, and citation omitted).

Defense counsel was not ineffective for failing to consult with a forensic expert, and even if he were, defendant has not proven that he was prejudiced by the mistake. Defendant argues that because statements were introduced at trial about AH's participation in a forensic interview, defense counsel should have at least consulted with a forensic expert. Notably, no direct statements from AH's forensic interview were admitted at trial. Instead, the SANE nurse testified regarding AH's disclosures made during the interview, including defendant's repeated digital and oral contact with AH's vagina. This testimony was corroborated by AH, who provided extensive firsthand testimony of defendant's repeated sexual assaults.

Defendant largely relies on *In re Casto*, 344 Mich App 590, 595-601; 2 NW3d 102 (2022), in which this Court determined that a respondent in a child protective proceeding was denied the effective assistance of counsel when his counsel failed to consult a forensic expert after learning that, at the adjudication, the petitioner would present sexual-assault allegations that the minor child made during a series of forensic interviews. The petitioner heavily relied on the minor child's forensic-interview statements as evidence of the alleged abuse, along with petitioner's expert witnesses whose testimony bolstered the credibility of those statements. *Id*. at 600-601. The respondent's counsel's trial strategy was to show that the child's statements "were not credible and were instead the product of coaching by [his] mother," yet she did not consult "an expert who could have provided valuable information on child memory, suggestibility, source misattribution, and forensic-interview protocols." *Id*. at 618.

*In re Casto* is clearly distinguishable from this case. Here, no statements were directly admitted from the forensic interview, and any statements regarding AH's allegations elicited from the SANE nurse were consistent with AH's direct testimony. Furthermore, AH was 18 years old

---

responsibility examination under MCL 768.20a, he has waived that argument. See *People v Kelly*, 231 Mich App 627, 640-6411 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .").

when she testified and between 12 and 15 years old when the sexual assaults occurred, whereas the child in *In re Casto* was four years old when he was first interviewed. *Id*. at 597. AH's forensic interview was relatively insignificant compared to the physical evidence and direct testimony against defendant. It was sound trial strategy for defense counsel to determine that it was not worth the time and resources to consult experts on forensic interviewing when the reliability of AH's interview was not seriously in dispute. Defendant therefore fails to satisfy his burden to prove how defense counsel's failure to consult a forensic expert rendered him ineffective. And even if defense counsel should have consulted an expert, defendant has not shown prejudice—the forensic interview played such a minor role in the proceedings that the direct testimony and DNA evidence would likely lead the jury to the same verdict.

### 4. DISCOVERY OF MEDICAL RECORDS

Finally, defendant argues that defense counsel was ineffective because he failed to request AH's medical records, which he suggests may have contained exculpatory evidence. Specifically, defendant suggests that AH's testimony regarding her pregnancy scare required defense counsel to investigate whether AH had had any other sexual partners, which might be documented in her medical records. This argument also fails.

A person's privileged information may be discoverable when a "defendant has a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994). Prohibited discovery is governed by MCR 6.201(C), which states, in relevant part, as follows:

> (1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2).

> (2) If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

> * * *

> (b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony. [MCR 6.201(c)(1) and (2)(b).]

Defense counsel was not ineffective for failing to obtain or request AH's medical records because defendant cannot show that the records likely contained material information necessary

to the defense. Defendant specifically cites AH's concern she was impregnated by defendant when she was between the ages of 13 and 14 and that because some trial testimony suggested that AH once snuck out of the house to meet a boy,[5] she may have had another sexual partner who could have been the source of AH's pregnancy scare. Defendant argues that this information could be documented in the records from AH's yearly doctor visits.

Courts are responsible for precluding discovery requests that amount to "mere fishing expeditions," especially if admitting that evidence "would harass, annoy or humiliate sexual assault victims." *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984). MCR 6.201(C)(2) specifically requires that defendant have a "good faith belief, grounded in articulable fact." Even if defense counsel believed in good faith that AH had another sexual partner at the time of the alleged abuse, defendant has not articulated any facts that would support a good-faith belief that the existence of another sexual partner would be disclosed in AH's medical records. Assuming arguendo that AH's doctor would have asked her (at just 13 to 14 years old) whether she was sexually active, an affirmative response to that question would not reveal the existence of another sexual partner unless AH identified the partner as someone other than defendant *and* the doctor included those details in the medical record. A request for those records would be based on pure speculation, not articulable fact. Accordingly, the trial court would be required to respect AH's doctor-patient confidentiality and prevent the discovery. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because any attempt to obtain AH's medical records would have been futile, defense counsel was not ineffective.

### III. CONCLUSION

Defendant has failed to prove that he was denied the effective assistance of counsel when defense counsel did not present an alibi defense, request an independent competency evaluation, consult an expert in forensic interviewing, or request discovery of AH's medical records.[6]

---

[5] Defense counsel asked if AH had made up the abuse allegations because she was caught sneaking out of the house to meet up with her boyfriend. AH admitted that she was once caught sneaking out but clarified that "it was not to go meet a boy."

[6] Because we find no error in defense counsel's performance, defendant's argument that reversal is required because of the cumulative effect of the alleged errors necessarily fails. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

Therefore, the trial court did not abuse its discretion when it denied defendant's motion for a new trial.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron